**MILLTEX INDUSTRIES CORP., Plaintiff,**

v.

**JACQUARD LACE COMPANY, LTD., Defendant.**

No. 88 Civ. 3489 (TPG).

United States District Court, S.D. New York.

Oct. 23, 1992.

Arthur R. Lehman, Lehman & Gikow, P.C., New York City, for plaintiff.

Avrom R. Vann, Vann & Slavin, P.C., New York City, for defendant.

### OPINION

GRIESA, Chief Judge.

This is a motion requesting that sanctions be imposed upon defendant Jacquard Lace Company, Ltd. and its attorney, Avrom Vann, Esq.

The motion for sanctions is granted to the extent described hereafter.

### FACTS

The basic facts giving rise to this lawsuit are set forth in the opinion of the Court of Appeals, *Milltex Industries Corp. v. Jacquard Lace Company, Ltd.*, 922 F.2d 164 (2d Cir.1991). Additional facts relevant to the sanctions motion are set forth in detail. The court's findings are based to a substantial extent on testimony taken, and materials submitted to the court, commencing in 1990 when the court began a detailed inquiry into the conduct of the parties and the attorneys in this action.

On March 7, 1988 Jacquard filed suit in an Alabama state court. That was a suit to recover the price of goods sold and delivered. Jacquard was the seller and Milltex was the buyer.

On May 13, 1988 Milltex filed the present action in the federal court in New York City.

Milltex claimed that Jacquard was liable to it in damages since Jacquard agreed to supply a particular quantity of goods and only supplied part of what was agreed upon.

In the course of time the substance of the Jacquard Alabama complaint became a counterclaim in the federal court action, and the substance of the Milltex federal complaint became a counterclaim in the Alabama action. Thus, there were two separate actions raising the same issues.

There was no application made to the federal court to stay or delay the federal action. Indeed, until certain events occurred at the time the trial of the federal action was almost concluded, the federal court was not notified of the existence of the Alabama action.

### The Federal Court Trial

The federal case proceeded promptly to trial. December 31, 1988 was established as the date when discovery was to be completed and the case was marked ready for trial on reasonable notice after that date. On February 7, 1989 the parties were notified that trial would commence on February 15, 1989, which in fact it did.

Milltex was represented at the trial by its New York attorney, Arthur R. Lehman, Esq. Jacquard was represented by its New York attorney, Avrom Vann, Esq.

Lehman has testified that at the conclusion of a deposition held on December 22, 1988 he and Vann agreed that the first action to go to trial would be dispositive (Transcript of April 19, 1990 pp. 6–7, 18–20). According to Lehman, this was an oral agreement not placed on the record of the deposition or otherwise reduced to writing. Vann testified that there was no such agreement (Tr. 12–14).

It is not of crucial importance to determine whether the precise agreement testified to by Lehman was entered into. The fact is that the New York action was the first to come to trial. Both parties commenced that trial without referring in any way to the Alabama action. Needless to say, this conduct signalled the intention of both parties to try the issues in the federal court in New York and obtain a judgment from that court disposing of these issues. The court has no

reason to believe that, as of the time the trial commenced, the parties had any other intention. The problem which gives rise to the present sanctions motion is the fact that Jacquard and its attorney Vann subsequently decided to abandon the New York action before the trial was completed and to pursue the Alabama action.

Shortly before the New York trial started, Jacquard advised the court that it believed that it was entitled to summary judgment on the basis of the Statute of Frauds. Since trial was imminent, the court decided to hear argument on that point at the opening of the trial. The case was called for trial on February 15 and argument was held on the Statute of Frauds issue. The court ruled that this issue involved factual problems requiring trial. The case therefore moved immediately into the trial on February 15. This was a Wednesday.

Once the court ruled that summary judgment could not be granted, Jacquard participated in the trial without objection. No mention was made of the pending Alabama case.

This was a non-jury case. The two main witnesses on the issue of liability (as distinct from damages) were Michael P. Selim, president of Milltex, and Panis Diamantis, chief operating officer of Jacquard. Selim resides in New York City. Diamantis lives in Huntsville, Alabama. Both attended the trial and testified.

As already described, there was a trial session on Wednesday, February 15. There was also a trial session during the afternoon of Thursday, February 16.

As of the end of the day the 16th, the trial was not going well for Jacquard. Diamantis had given patently untruthful testimony about his negotiations with Selim. The problem with the Diamantis testimony was summarized by the court in the transcript of June 22, 1989 at pages 2–5.

One of the critical points in the case was whether or not there was an agreement for Jacquard to furnish 40,000 pounds of fabric, as Milltex claimed, or only 20,000 pounds, as Jacquard claimed. Selim testified that the agreement for 40,000 pounds was made at a meeting in January 1987. Diamantis, in his responsive testimony, purported to cover meetings between the parties, including the January meeting, but actually said very little about what occurred (Tr. 151–52). Then, when pressed by the court, he described certain things that were said at the January meeting, but testified that nothing was said about quantity (Tr. 154). He then testified as to subsequent conversations with Selim, with no indication of any discussion of quantity until a problem arose and was resolved about the procurement of yarn. Diamantis said that at this point he requested approximately 17,000 pounds of yarn "to begin to use the machine" (Tr. 160). This would yield up to 25,000 pounds of fabric (Tr. 166). Diamantis then said that he sent Milltex a confirmation for 20,000 pounds.

At this juncture the court asked whether there had been an oral agreement for 20,000 pounds (Tr. 161). Diamantis answered that there had been no real agreement as to any quantity but that there were "a lot of figures mentioned" (Tr. 161). The court then noted that Diamantis had not previously testified about discussions of a lot of figures, and asked what figures had been mentioned (Tr. 161–62). Diamantis then testified that figures had been mentioned "during the general business discussions ... 10 and 15 and 5 and 20 and 30,000 pounds" (Tr. 162). The court then asked Diamantis to go back and describe the discussions of figures. In response to this, Diamantis testified that "one specific thing" he remembered was that he said that in order for Jacquard to make the fabric with the particular design requested, Jacquard "needed a substantial quantity" to be ordered; Jacquard needed a "substantial order in order to justify the expenses of setting up the machine" (Tr. 162–63). Diamantis then said that he did not give Selim any specific figure defining a "substantial order" (Tr. 163). He then reiterated his testimony that a number of figures were mentioned in the course of the discussions but could not testify as to the specifics of what in fact was mentioned about particular figures (Tr. 164–65).

All in all, the Diamantis testimony was evasive, contradictory and not an honest description of the facts.

Diamantis was still on direct examination as of the end of the day Thursday, February 16. At the close of the session Diamantis addressed the court directly, stating that he had a flight at 2:30 p.m. the next day. Diamantis hoped to return to his home in Huntsville, Alabama for the Washington's Birthday weekend. The court had already announced that it could not commence the Friday session until 11:30 a.m. but nevertheless agreed to adjourn at 1:00 p.m. so that Diamantis could catch his flight (Tr. 173).

The session of Friday, February 17, opened with Vann making a motion for a mistrial because of alleged undue interference by the court in the examination of his client (Tr. 174). The court urged that the time be used to conclude the testimony of Diamantis, rather than in argument. Vann responded that his client had no problem in returning to New York, stating "that is not an issue" (Tr. 176–77). It was finally agreed to defer any further argument on the motion for a mistrial and to go as far as possible with the further examination of Diamantis. His direct examination was concluded (Tr. 212). The cross-examination commenced but did not finish that day. The court adjourned the case in accordance with the Thursday agreement, with the understanding that there would be a conference call on Tuesday in which the parties and the court would decide when to resume the trial. The day concluded with the statement by the court that "we will talk Tuesday" (Tr. 224).

The court was willing to leave the schedule somewhat open mainly out of consideration for Jacquard, but it was clear to all concerned that the court counted on resuming the trial very promptly.

**The Alabama Proceeding**

The Alabama case was brought in the Circuit Court for Madison County, located in Huntsville, Alabama. Milltex's Huntsville attorney was James B. Schrimsher, Esq. Jacquard's Huntsville attorney was William Sanderson, Esq.

The Alabama action was originally set for trial in October 1988. Milltex moved for a continuance and the case was taken off the trial calendar.

On January 20, 1989 a notice was issued by the Alabama court bearing the name of Judge Jeri Blankenship. It was entitled "Non–Jury Docket Tuesday, February 21, 1989, 9:00 A.M." The case of *Milltex v. Jacquard* was fourth on a list of ten to be tried.

Neither Lehman nor Vann mentioned this notice to the court in New York prior to the commencement of the trial or at any time up to and including the adjournment which occurred on Friday, February 17. Although this was decidedly imprudent, in and of itself it did not involve bad faith or any breach of duty to the court as long as the parties intended to pursue in an orderly way the trial which they had commenced. In other words, the Alabama calendar call did not in itself interfere with the New York action. As will be shown later in this opinion, neither party was required to pursue or press forward with the Alabama action.

Nevertheless, the court has specifically inquired as to why neither Lehman nor Vann apprised the court of the Alabama trial notice at the commencement of the New York trial. Lehman's response is that he knew of the Alabama notice, but was relying on the agreement with Vann that the first case to go to trial would be dispositive. Although it would certainly have been wise to advise the New York court of the circumstances, Lehman was not acting in bad faith since he was at all times ready to carry the New York case to judgment.

Vann's testimony as to why he did not notify the New York court of the Alabama notice is that he did not know about that notice. The court does not credit this testimony.

At a hearing in the New York action held on April 19, 1990, Vann stated that as of the time the New York trial commenced on February 15, he did not know about the upcoming calendar call in Alabama (Tr. 20–21). When asked about possible communication with Sanderson, Vann answered that his

"contact was through Mr. Diamantis" (Tr. 22). At a later point Vann said that he was sure that he and Sanderson spoke before the New York trial commenced, but that Sanderson did not advise Vann of any calendar call in Alabama (Tr. 27).

An affidavit of Sanderson dated April 2, 1990 describes the Alabama proceeding, but contains no information at all about communications between Sanderson and Vann.

Diamantis testified about these circumstances on June 15, 1990. He stated that he was told by Sanderson about the case being on the Alabama court docket (Tr. 7), and told Vann about this at some time. He could not recall when his communication to Vann occurred, except that it was sometime in February 1989 (Tr. 8). He testified that he did not recall whether or not he talked to Vann about the upcoming Alabama trial during the course of the New York trial (Tr. 21).

Certain time records of Vann's office were submitted to the Second Circuit Court of Appeals in connection with one of the applications to that court. These were attached to an affidavit of Vann dated September 13, 1990, and are also attached to an affirmation by Lehman submitted in the District Court dated January 18, 1991. These time records show that Vann spoke to Sanderson (listed as "Woody") on February 7 and February 9, 1989. Vann's associate, Tina Yanover, spoke to Sanderson on February 14.

The court is convinced that these conversations could not have occurred without Sanderson advising Vann and Yanover of the February 21 Alabama calendar call. The court finds that the testimony of Vann that he did not know of this call before the New York trial is false. The testimony of Diamantis about lack of memory is equally false. It is impossible to believe that Diamantis and his lawyers would not give the most serious consideration to the unique fact of two trials being called in the same case almost simultaneously.

**The February 17 Adjournment**

The events of Friday, February 17 in the New York trial will now be examined in more detail. As already indicated, Diamantis addressed the court personally at the end of the session on Thursday, February 16, and asked to have an early adjournment on Friday because of the possible difficulty of obtaining a flight to his home in Huntsville, Alabama for the holiday weekend. Diamantis made no mention of any possible trial in Alabama. Vann addressed the court the following morning and gave assurances that there would be no problem whatever in Diamantis returning to New York to conclude the trial. Vann made no mention of the Alabama case. The court did in fact adjourn the New York trial on Friday as agreed, with the understanding that there would be a conference telephone call on Tuesday, February 21, to set the time for concluding the trial. Although Diamantis and Vann knew that February 21 was the precise time for the Alabama trial calendar on which *Milltex v. Jacquard* was fourth on the list, neither Diamantis nor Vann mentioned this to the court.

When Diamantis was asked to explain this, his answers were evasive and wholly incredible (Transcript of June 15, 1990 pp. 17–20). As to Vann, as already described, he falsely denied knowing about the Alabama calendar call.

The only possible conclusion is that something occurred which Vann and Diamantis are intent on concealing. It is difficult to escape the conclusion that Vann and Diamantis, realizing that the New York trial was going badly for Jacquard, decided to take advantage of the coincidence of the Alabama trial call, with the hope that the Alabama court might not be so probing as to the credibility of Diamantis. It is clear that they made this decision either at the time of the adjournment or very shortly thereafter. Whenever this occurred, the decision was concealed from the New York court.

The question again arises as to whether Lehman was not also at fault. Lehman was present at the February 17 adjournment, and there is certainly a question as to why he did not inform the court of the February 21 Alabama calendar call. Lehman's explanation was: "It was a huge bit of ignorance" (Transcript of April 19, 1990 p. 20). He then stated that he relied on the assurances of Vann and Diamantis that they would return

to the trial in New York (Tr. 20). Indeed, these were strong and clearcut assurances. Lehman was entitled to rely on them, although it would have been prudent for Lehman to lay all the circumstances before the court, so that there could be a full record made of Jacquard's commitment to complete the trial in New York despite the Alabama notice. However, Lehman did not act in bad faith. He did nothing to interfere with the course of the New York action.

Judge Blankenship called the trial calendar in Huntsville, Alabama at 9:00 a.m. on Tuesday, February 21. Schrimsher, on behalf of Milltex, moved for a continuance based on the fact that the New York trial had commenced and was nearly concluded. Sanderson, on behalf of Jacquard, opposed the motion and pressed for the commencement of the trial in Alabama. Judge Blankenship denied the motion for continuance and directed that the case would be tried the following day, February 22.

In his affidavit opposing the present motion, Vann states that he had a brief conversation with Sanderson on the morning of February 21, in which Sanderson advised Vann that the Alabama case had been adjourned to the morning of February 22. During this conversation Vann directed Sanderson's attention to certain cases and materials which had come to Vann's attention during the course of preparing for the New York trial, which Vann thought would be of assistance to Sanderson in the Alabama proceeding. Vann confirmed these references in a letter to Sanderson which Vann sent in the early afternoon of February 21.

It is obvious that Jacquard and its attorneys had planned their strategy to press the Alabama action prior to the court appearance in Huntsville on February 21. In this connection it should be remembered that when Vann and Diamantis departed from the New York court the previous Friday, they committed themselves to returning for the completion of the New York trial and agreed that there would be a conference call with the court on February 21 to set the schedule for the resumption of that trial.

To honor this commitment required that Jacquard either drop the Alabama case or consent to its adjournment. At the very least Jacquard and its New York attorney Vann were duty bound to apprise the court in New York immediately of any change in what had been represented to that court. If they wished to be excused from resuming the New York trial, the only forthright course of action was to move for a stay of the New York case.

Vann and Jacquard did none of these things. They concealed the facts from the New York court as long as they could. They ignored the promise of a conference call to the New York court on February 21 and, without notice to that court, were engaged in preparing and pressing the Alabama case. They made no application for a stay.

Late in the afternoon of February 21 Lehman, on behalf of Milltex, appeared before the court in New York applying for a temporary restraining order against Jacquard proceeding with the Alabama action, and seeking a hearing date on a motion for preliminary injunction. This was the first time that the New York court learned of the Alabama action. Lehman had notified Vann of the application and both Lehman and Vann were present. At 5:10 p.m. the court signed the order setting February 24 as the date for a hearing on the motion for preliminary injunction and granting a temporary restraint as follows:

It appearing that these acts of defendant will result in immediate and irreparable injury, loss or damages to plaintiff herein, and an injunction is needed to protect the jurisdiction and preserve the authority of this Court, and to avoid needless litigation; it is

ORDERED, that pending the hearing and determination of this motion,

Defendant, its agents, servants, employees, attorneys, and all persons acting in concert or participation with it, are enjoined from prosecuting or proceeding in any way with respect to the Alabama action.

Vann saw the court sign the order and Vann read the order.

It should be noted that the introductory paragraph of the order stated:

Upon reading and filing the affidavit of Bruce Schrimsher, Esq., sworn to the 21st day of February, 1989 (the "Schrimsher Affidavit"), the undertaking in the sum of $1,000, and the summons and complaint herein, . . .

When the order was presented to the court there was a blank space for the amount of the undertaking. The court filled in the sum of $1,000. Obviously, since the amount of the undertaking had not been fixed, the undertaking was not literally present when the order was signed on February 21. It should also be noted that Vann was not given a copy of the order at the February 21 proceeding, nor did he ask for one. Nevertheless, when he read the order at the time it was signed, its meaning was simple and unmistakable.

Milltex obtained the bond on February 22 and filed it with the court on February 23. The order was formally served on Vann's office on February 22.

■ Once the order was signed, it was binding on Jacquard until and unless it was vacated. This was true regardless of the fact that the bond had not yet been obtained and formal service was not made. *See Universal Athletic Sales v. Salkeld,* 376 F.Supp. 514, 516 (W.D.Pa.1974), *vacated on other grounds,* 511 F.2d 904 (3d Cir.1975). Vann had the right to apply to the Court of Appeals for relief from this order. He had the right to ask the District Court for a stay pending appeal to the Court of Appeals. In the event such a stay was denied, he had the right to apply for a stay in the Court of Appeals. Vann took no steps to appeal. He made no request for a stay in the District Court or in the Court of Appeals.

Vann has represented to this court that it was his professional view that the temporary restraining order was not effective until Milltex obtained the bond and made formal service. However, he has not cited any authority for this, and there is no indication that he researched the question after the signing of the order by the court on February 21. Vann made no statement to the court or to the Milltex attorney that the order need not be complied with until the bond had been obtained and formal service effected.

Diamantis has testified that Vann did not communicate with him regarding the restraining order (Transcript of June 15, 1990 p. 35). According to his testimony, he did not speak to Vann about the order until after the Alabama judgment (which will be described shortly) was entered on February 22. He cannot recall exactly when this conversation with Vann following the entry of the Alabama judgment occurred; it could have been the 22nd, or the day after, or the 24th (Tr. 37–40). Diamantis testified that on the morning of February 22 he did receive a call from Sanderson, who said that he had learned from the local attorney for Milltex that the judge in New York "was going to sign" a restraining order subject to Milltex posting a bond (Tr. 34). Thus, to Diamantis' understanding, there was not really an order, but only an order *to be signed* after Milltex posted a bond (Tr. 36). Diamantis does not recall either attorney ever showing him the order or reading him the order (Tr. 35–36). When asked if he ever received a copy of the order, Diamantis answered that he did not know, since he has so many papers in this case (Tr. 43). According to Diamantis, neither Vann nor Sanderson ever, at any time, gave him advice regarding whether Jacquard was required to comply with the restraining order (Tr. 44).

Vann was asked at the hearing of April 19, 1990 in New York whether, following the signing of the restraining order, he communicated with Sanderson. Vann answered that he could not recall (Tr. 23). As already indicated, Vann testified that he believed that the restraining order was not in effect until the bond was posted and until it was formally served on him, and these steps were not completed until February 22 (Tr. 23–25, 32, 33). When asked whether he recalled communicating with Sanderson after the filing of the bond and the formal service of the order, Vann said that he did not know whether he did or not. He thought that by this time he had heard of the Alabama judgment (Tr. 28–29).

Vann's time records show that he communicated with both Sanderson and Diamantis on Monday, February 20. Vann communi-

cated with Sanderson on February 21 and again on February 22.

The events of February 21, 1989 were the subject of a telephone call made by Vann to the law clerk for the judge in the New York action on May 2, 1990. Vann asked the law clerk to tell the judge that he was requesting a conference to apologize to the court for his behavior on February 21, 1989. Vann stated that upon rethinking the incident, he felt that he was wrong in not informing Jacquard of the court's order enjoining Jacquard from proceeding in the Alabama action. The law clerk promptly made a memorandum describing this conversation. This memorandum was circulated to Vann and Lehman. On May 7, 1990 Vann wrote the court confirming that he had told the law clerk that he wished to make amends to the court for not having contacted Jacquard on February 21, but he wished to correct "a glaring error" made by the law clerk in that Vann did not admit to any wrongdoing on his part.

In his affidavit opposing the present motion Vann again states that he did not advise Jacquard of the signing of the order.

The fact is that Vann had an absolute duty to communicate the terms of the February 21 restraining order to his client and to do so immediately. If Vann did not communicate the facts about the order, this was a breach of his professional duty to his client of the most serious kind, and was also a breach of his duty to the court.

It is difficult to make any categorical findings as to all that actually occurred between Vann and his client on February 21–22, except that it is certain that they had resolved to abandon the New York action in favor of the Alabama action, and to do so by whatever means would serve that end. As to whether Vann did or did not notify his client of the February 21 restraining order after it was signed, there is no way to be certain of exactly what occurred. In the court's view the probabilities are strong that Vann immediately informed Diamantis of what had happened, and that they both decided to ignore the order. This would mean that Vann's various representations to this court to the contrary would be false. On the other hand, it is possible that Vann deliberately refrained

from telling Diamantis of the order as a device to evade compliance with it. One alternative is as bad as the other.

As it turned out, Milltex's Alabama attorney Schrimsher notified Jacquard's attorney Sanderson of the restraining order. But this was not the equivalent of Vann communicating with his client and giving proper advice as to what duties his client did or did not have under that order.

**The Alabama Judgment**

Schrimsher and Sanderson appeared before Judge Blankenship on the morning of February 22. Sanderson advised the judge of the temporary restraining order issued by the New York court. Sanderson complained of being in a very difficult position, because Jacquard would prefer to have the case in Alabama proceed since it was filed first, but Jacquard was in jeopardy of being in contempt of a federal judge. Sanderson reminded Judge Blankenship that there was a summary judgment motion pending in the Alabama case which had not been acted upon, and took the view that it was up to Judge Blankenship's discretion as to whether she wanted to case to go forward or not.

Judge Blankenship denied a renewed motion by Milltex for a continuance. The judge went on to say that her court had a perfect right to go ahead, and further stated to Sanderson that it was "your decision at this time." The judge said that the Jacquard case was the only case on her docket and she was prepared to try it from beginning to end that week and into the next week if necessary. The judge reiterated, "So you need to make a decision, Mr. Sanderson." Sanderson then suggested that the judge order Jacquard to go forward, to which the judge replied that she was "not going to order you to go forward." Sanderson replied that if the judge was going to call the case for trial and dismiss it if Jacquard did not proceed, the choice of Jacquard would be to go forward. The judge then reminded Sanderson that Jacquard had "Rule 41" available. This was followed by an off-the-record discussion. Rule 41 of the Alabama Rules of Civil Procedure provides, among other things, that

there can be a court order allowing a plaintiff to dismiss an action without prejudice.

Following the off-the-record discussion, the judge asked Sanderson if Jacquard wished a ruling on its motion for summary judgment. Sanderson answered in the affirmative. The judge then took a recess and returned to dictate on the record a ruling granting summary judgment to Jacquard. Judgment was duly entered in favor of Jacquard on February 22. That judgment was affirmed by the Alabama Supreme Court on January 12, 1990.

**Further Proceedings in New York**

The District Court took the view that the judgment in the Alabama action had been obtained improperly. The court completed the trial of the New York action and entered judgment in favor of Milltex on October 30, 1989. This was reversed by the Court of Appeals on January 4, 1991. The court ruled that, since the Alabama judgment was entered first, it was entitled to full faith and credit and barred the entry of any judgment in the New York action. The Court of Appeals held that the Alabama court was not bound by the temporary restraining order entered in the New York action. *Milltex Industries Corp. v. Jacquard Lace Co.*, 922 F.2d 164 (2d Cir.1991).

Certain other proceedings in New York need to be described. Following the issuance of the temporary restraining order of February 21, the District Court signed a preliminary injunction on April 3, 1989. Jacquard appealed. It appears that both Milltex and Jacquard recognized at some point that the restraining order and preliminary injunction had become academic. They agreed to terminate the appellate proceedings. As part of that agreement Milltex and Jacquard stipulated that the decretal paragraphs of the temporary restraining order and preliminary injunction were to be vacated, and Milltex waived any right to institute civil or criminal contempt proceedings.

During the pendency of the appeal from the District Court's judgment of October 30, 1989 a question arose as to whether certain District Court proceedings were appropriate in connection with a motion by Jacquard under Fed.R.Civ.P. 60(b) to vacate the feder-al court judgment following the decision in the Alabama case by the Alabama Supreme Court. On May 29, 1990 the Second Circuit Court of Appeals entered an order staying further proceedings in the District Court. The Court of Appeals concluded the order with this statement:

> This disposition is without prejudice to Judge Griesa's taking any other steps to determine whether disciplinary action is appropriate against any party, witness or counsel of record in this case.

In its decision of January 4, 1991 reversing the District Court judgment, the Court of Appeals' opinion concluded as follows:

> This disposition does not preclude the district court from taking disciplinary action if it deems such action appropriate.

**DISCUSSION**

■ It is well established that the court has inherent power to impose sanctions against attorneys and parties who abuse the processes of the court by dishonesty and other forms of bad faith. *See Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir.1986). Moreover, 28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Milltex argues that Fed.R.Civ.P. 11 also applies. However, Rule 11 deals mainly with pleadings and other papers signed by attorneys. A somewhat different problem is presented by the present case.

In considering the subject of sanctions two points must be kept in mind. The first is that no sanction should be imposed which would have the effect, directly or indirectly, of depriving Jacquard of the fruits of the Alabama judgment. The Court of Appeals has determined that this judgment must be given full faith and credit. Secondly, no sanction should be imposed which would have

the effect of holding Jacquard or Vann in contempt for violation the February 21, 1989 temporary restraining order or the April 3 preliminary injunction. The parties have stipulated that there would be no contempt proceedings.

However, neither of the above considerations prevents the court from deciding whether sanctions should be imposed against Vann and Jacquard.

■ The court finds that both Vann and Jacquard (acting through Diamantis) engaged in the most serious misconduct which requires sanctions. The court does *not* find that they commenced the New York trial in bad faith. However, the court finds that they acted in bad faith in deciding to subvert that action and that they did so when the falsehoods in the trial testimony of Diamantis became apparent.

Vann and Jacquard obtained an adjournment of the New York action on the basis of a commitment that they would return and complete that action. The court finds that that commitment, embodying both a representation to the court and a promise to the court, was made under false pretenses and with no intention to carry out the commitment. Even if the decision to violate the commitment was not fully formed at the time the commitment was made, the decision was surely formed soon thereafter, and well before the parties appeared in the Alabama court on February 21. Vann and Jacquard violated their commitment to the New York court and further violated their duty to that court to make a prompt and honest disclosure of the facts.

The court is not holding Vann and Jacquard in contempt for violating the February 21 order. However, in dealing with the subject of sanctions, the court finds that the conduct of Vann and Jacquard in connection with that order was part of the pattern of subterfuge and defiance of obligation to the court.

The failure by Vann and Jacquard to make prompt disclosure of the facts had the most serious consequence. If this court had known the true state of facts it would have taken the necessary steps to ensure that the trial was completed in the New York action. It would have proceeded with the trial on as continuous a basis as possible and would have given directions to Vann and Jacquard which would have established a schedule binding upon them on pain of contempt of court. It is clear not only that such steps would have been taken but that they would have been entirely reasonable.

This brings us to the question of what remedies are to be imposed. One obvious conclusion from what has just been stated is that Jacquard, with the aid of Vann, obtained the Alabama judgment by improper means. However, as already stated, the sanctions cannot operate to deprive Jacquard of the Alabama judgment.

Another way of viewing the results of the misconduct is to realize that the New York action was frustrated and rendered useless. An appropriate remedy for this is to compel Vann and Jacquard to reimburse Milltex for the cost of going to trial in that action. This should include the cost of pleadings, trial preparation and the actual trial. Such reimbursement, however, cannot cover costs incurred following the entry of the Alabama judgment on February 22, 1989.

In its motion for sanctions Milltex did not submit materials regarding the precise amount of sanctions to be levied. This was prudent since it was appropriate to have the court rule on the basic entitlement to sanctions before dealing with precise monetary amounts. It will now be necessary for Milltex to submit supplemental papers providing the court with information regarding the proper amount of sanctions to be levied in view of the ruling in this opinion.

In addition to determining the amount of sanctions to be awarded to Milltex, the court will consider the question of whether Vann and Jacquard can be held liable to pay sanctions to the court. The court invites any briefing on this question which Milltex, Vann and Jacquard wish to provide.

The further submissions required of Milltex are due 30 days after the filing of this opinion. Further submissions by Vann and

Jacquard will be due 60 days after the filing of the opinion.

SO ORDERED.