**MILLTEX INDUSTRIES CORP.,
Plaintiff–Appellee,**

v.

**JACQUARD LACE COMPANY,
LTD., Defendant,**

**Avrom R. Vann, Esq., Appellant.**

**No. 934, Docket 94–7498.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 10, 1995.

Decided March 31, 1995.

---

Avrom R. Vann, Vann & Slavin, New York City, for appellant.

David Gikow, Lehman & Gikow, P.C., New York City (Arthur R. Lehman, of counsel), for appellee.

Before OAKES, KEARSE and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

Avrom R. Vann, counsel for Jacquard Lace Company, Ltd. ("Jacquard"), appeals a judgment of the United States District Court for the Southern District of New York (Thomas P. Griesa, Chief Judge), holding him and Jacquard jointly and severally liable for $21,510.23 in attorney's fees and costs incurred by appellee Milltex Industries Corp. ("Milltex") in bringing the underlying action.[1] The question presented is whether the district court abused its discretion in imposing the sanctions on Vann pursuant to its inherent powers. We hold that it did. Under standards well established by Circuit precedent, Vann's conduct must have been "entirely without color" and motivated by "improper purposes" to justify the imposition of sanctions. *United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir.1991); *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir.1986), *cert. denied sub nom. Suffolk County v. Graseck*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). The district court—never referring to these standards—concluded that Vann acted in bad faith. Because the district court's factual findings do not support its ultimate finding of bad faith, we reverse and remand the cause with instructions to strike the part of the judgment imposing sanctions against Vann.

## I. FACTS

The problems in this case began when Milltex and Jacquard decided to pursue their claims in different forums. On March 7, 1988, Jacquard filed suit in Alabama in the Circuit Court of Madison County to recover payment for 20,000 pounds of lace fabric that it manufactured and delivered to Milltex (the

---

1. Jacquard does not appeal the judgment against it. We therefore examine the propriety of the sanctions with respect to Vann only.

"Alabama action"). Two months later, Milltex filed suit in the Southern District of New York, contending that Jacquard breached a contract to supply 40,000 pounds of the fabric. The parties counterclaimed in each action, making the issues the same in each. On January 20, 1989, the Alabama court notified the parties that the case was slated for trial on February 21, 1989. In the meantime, the parties had completed discovery in the federal action. On February 7, 1989, the federal district court scheduled the bench trial to begin on February 15, 1989.

Trial sessions were held for part of each day on February 15 and 16, 1989. During the afternoon session on Thursday, February 16, Jacquard's chief operating officer and principal witness, Panis Diamantis, told the district court that he had rescheduled his return flight to Alabama from Thursday night to Friday the 17th at 2:30 p.m. when it became apparent that the trial would not be completed on the 16th. According to Diamantis, this was the only flight he could find that would permit him to return to Alabama for the holiday weekend. The district judge stated that he wanted to resume the trial at 11:30 a.m. on Friday and told Diamantis that he could leave at 1:00 p.m.

On Friday, Vann began the trial session by moving for a mistrial on the ground that the court had improperly interfered with the examination of his client. Concerned that it might be difficult for Diamantis to return to New York, the district judge urged Vann to defer argument on such a motion in order to allow Diamantis to complete his testimony before 1:00 p.m. Vann responded that "I am not concerned about his returning to New York. . . .[H]e will return if necessary to

New York. That is not an issue." Appellant's Br. at 7. Vann then agreed to defer argument on the motion and to resume the trial promptly. The cross-examination of Diamantis could not be completed, however, and the court adjourned the trial at 1:00 p.m. on the understanding that a date for the completion of the trial would be set in a conference call on Tuesday, February 21, 1989. No one mentioned to Judge Griesa that the Alabama court had scheduled the Alabama trial to begin on February 21, 1989.[2]

In the Alabama court on February 21, 1989, Milltex's Alabama counsel, James B. Schrimsher, moved for a continuance of the trial there, pointing out that the trial in New York was almost complete. Opposing the request, Vann's counterpart in Alabama, William Sanderson, argued that "considerable testimony" remained to be heard in New York. The Alabama court denied Milltex's motion and set the trial to begin the following day.

Upon realizing that Jacquard intended to pursue the Alabama action immediately, Milltex's New York counsel, Lehman, sought a temporary restraining order (TRO) in New York barring Jacquard from proceeding with the Alabama action. Instead of holding the anticipated conference call to discuss scheduling the end of the New York trial, the district judge held a hearing on February 21, 1989, to consider Milltex's TRO application. With both Vann and Lehman present, he granted the application. The same day, Milltex served a copy of the order on Sanderson in Alabama. On February 22, 1989, the Alabama court gave Jacquard the choice of whether to proceed, stating that "this court

2. In its opinion awarding sanctions against Vann and Jacquard, the district court stated that it was never notified of even the existence of the Alabama action until February 21, 1989, when Milltex applied for a temporary restraining order (TRO) prohibiting Jacquard from proceeding with the Alabama action. Opinion of Oct. 23, 1992, at 15, 153 F.R.D. 44, 46. Vann, on the other hand, contended in both his brief and at oral argument that his associate, Lance Grossman, mentioned the Alabama action at the first conference held with the court and requested that the federal action be stayed pending the outcome of the Alabama action. Appellant's Br. at 13. At oral argument Vann explained that he

never actually filed a motion for a stay because the district judge denied him permission to do so. Because counsel for Milltex at trial, Arthur R. Lehman, did not argue this appeal, we asked his partner, David Gikow, to have Lehman write a letter to the court describing what he remembered of the first conference. In a letter to this court dated February 10, 1995, but not received by the Clerk of the Court until March 1, 1995, Lehman states that Vann's associate "made a brief and vague reference to the existence of another lawsuit between the parties in Alabama," but denies that the associate asked the judge to stay the federal action.

has a perfect right ... to proceed with this." While voicing his concern that the federal court would hold his client in contempt of its order, Sanderson requested that the court decide Jacquard's pending summary judgment motion. The Alabama court agreed and, on the same day, granted Jacquard's motion for summary judgment and dismissed Milltex's counterclaim.[3]

In spite of the Alabama judgment, Milltex continued to pursue its application to the district court to enjoin Jacquard from proceeding in Alabama. The district court entered a preliminary injunction, preventing Jacquard from enforcing the Alabama judgment. After rejecting Jacquard's repeated attempts to have the court in effect recognize the Alabama judgment, the district court completed the federal trial, entering judgment in favor of Milltex on October 30, 1989.

On January 4, 1991, we reversed the judgment of the district court, holding that it had erred in refusing to accord the Alabama judgment full faith and credit. *Milltex Indus. Corp. v. Jacquard Lace Co.*, 922 F.2d 164 (2d Cir.1991). In that decision we noted that "[t]his disposition does not preclude the district court from taking disciplinary action if it deems such action appropriate." *Id.* at 168. Soon thereafter Milltex filed a motion for sanctions against Vann and Jacquard for their alleged misconduct before the district court. On October 23, 1992, 153 F.R.D. 44, the district court held that Vann and Jacquard "engaged in the most serious misconduct which requires sanctions," Opinion of Oct. 23, 1992, at 26, 153 F.R.D. at 52, but reserved decision on the amount of sanctions and whether to order Jacquard and Vann to pay sanctions to the court in addition to Milltex. On February 2, 1994, acting pursuant to the court's inherent power, the district judge directed that a judgment be entered in favor of Milltex. He held Vann and Jacquard jointly and severally liable for the sum of $21,510.23, and declined to order any payment to the court or the U.S. Treasury. Opinion of Feb. 2, 1994, at 3, 153 F.R.D. 54, 55. This sum represented the attorney's fees and costs Milltex incurred in prosecuting its action in federal court until February 22, 1989—the day the Alabama judgment rendered the federal proceedings meaningless.

## II. DISCUSSION

██ Pursuant to its inherent power, the district court imposed sanctions against Vann and Jacquard for acting in bad faith.[4] We review this exercise of power for abuse of discretion, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S.Ct. 2123, 2135, 115 L.Ed.2d 27 (1991), and with the understanding that "[b]ecause of their very potency, inherent powers must be exercised with restraint." *Id.* at 44, 111 S.Ct. at 2132.[5]

██ It is settled law that a court may impose attorney's fees under its inherent power as a penalty for misconduct during the

---

**3.** The Alabama Supreme Court affirmed the judgment on January 12, 1990. *Milltex Indus. Corp. v. Jacquard Lace Co.*, 557 So.2d 1222 (Ala.1990).

**4.** In its opinion finding that sanctions were appropriate, the district court also cited to 28 U.S.C. § 1927, which provides that

> [a]ny attorney or other person admitted to conduct cases in any court ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

When the district court ultimately imposed sanctions, however, it relied solely on its inherent power as a source of authority. *See* Opinion of Feb. 2, 1994. Even if the district court had imposed sanctions pursuant to 28 U.S.C. § 1927, the following discussion would apply equally to that provision. *See Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir.1986) ("[A]n award

made under § 1927 must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent power."), *cert. denied sub nom. Suffolk County v. Graseck*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987).

**5.** In *Chambers*, the Supreme Court stated that "when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." *Id.* at 50, 111 S.Ct. at 2136. In the instant case, the district court found Rule 11 of the Federal Rules of Civil Procedure inapplicable because the misconduct it observed did not involve any pleading or paper submitted to the court. Opinion of Oct. 23, 1992, at 25, 153 F.R.D. at 52. We find this aspect of the district court's decision unexceptionable. *See United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1344 (2d Cir.1991) ("Rule 11 sanctions must be based on the signature of an attorney or client on a pleading, motion, or other paper in a lawsuit.").

course of litigation. *See Chambers*, 501 U.S. at 49–50, 111 S.Ct. at 2135. Our Circuit has characterized this exercise of power as the "bad faith exception to the 'American Rule'." [6] *United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir.1991). Although we have suggested that only the *losing party* may be sanctioned under the exception, *see Hirschfeld v. Board of Elections*, 984 F.2d 35, 40 (2d Cir.1992) (exception to American Rule permits reasonable attorney's fees against losing party), the Supreme Court has made it clear that a court may sanction either the winner or the loser. *See Chambers*, 501 U.S. at 53, 111 S.Ct. at 2137 ("[T]he imposition of sanctions under the bad-faith exception depends not on which party wins the lawsuit, but on how the parties conduct themselves during the litigation.").

■ Thus, we will not upset an award of sanctions on the sole ground that it was imposed against the prevailing party or its lawyer. Nevertheless, sanctions are not appropriate unless the challenged actions are (1) "entirely without color" and (2) motivated by "improper purposes," such as harassment or delay. *Oliveri*, 803 F.2d at 1272 (internal quotation marks and citations omitted). In addition, the court's factual findings of bad faith must be characterized by "a high degree of specificity." *Id.* (internal quotation marks omitted).

Although the district court made several factual findings to support its decision to impose sanctions on Vann, these findings do not justify the conclusion that Vann acted in bad faith under the standards established by the law of our Circuit. The misconduct identified by the district court falls into two categories: (1) Vann's failure to disclose to the court the existence of the Alabama action and his client's intention to proceed there, and (2) Vann's failure to comply with the terms of the TRO.

## A. The Adjournment of the Federal Trial

■ The district court found that Vann and Jacquard "obtained an adjournment of the New York action on the basis of a commitment that they would return and complete that action." Opinion of Oct. 23, 1992, at 26, 153 F.R.D. at 53. According to the district judge, Vann and Jacquard decided to violate this commitment either at the time they made it or soon thereafter. It is unclear, however, what the district court meant when it referred to Vann's "commitment." Vann did tell the court that his main witness, Diamantis, would return to New York to complete his testimony on another date if they were unable to finish on Friday, February 17, 1989. But Vann did not violate this commitment because the New York trial was eventually completed—albeit only after Vann and Jacquard were unsuccessful in having the favorable Alabama judgment enforced. And to the extent the district court was referring to a commitment not to proceed in another forum, such a commitment was never made, at least not to the court.[7]

On the other hand, Vann did fail to inform the district court of the impending Alabama trial date, even though on February 17, 1989—when the federal trial was temporarily adjourned—it was clear that the federal trial would not be completed before the date set for the beginning of the Alabama action. Vann maintains that his associate had mentioned the Alabama action to the district judge at the first conference in the case and

---

6. The "American Rule" provides that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); 10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure ¶ 2675, at 257 (2d ed. 1983) ("In the United States, contrary to the practice in England, it has been the custom to require a litigant to assume the burden of paying for his own litigation connected legal services in the absence of a rule or statute to the contrary.") (citations omitted).

7. Before the district court and again in an appellate brief, Milltex's counsel contended that he had an oral agreement with Vann that there would be only one trial. Appellee's Br. at 5. Vann, however, has maintained that he never made such an agreement and that, if he had, Milltex surely would have mentioned it to the Alabama court or to the district judge when the judge was considering Milltex's application for a TRO. Appellant's Br. at 18. The district judge found it unnecessary to decide whether the agreement existed. Opinion of Oct. 23, 1992, at 3, 153 F.R.D. at 45.

had sought permission to file a motion for a stay of the federal action. Counsel for Milltex recalls that Vann's associate mentioned a related case in Alabama at the first conference, but he claims that the associate never discussed a possible stay of the federal action.[8] According to the district judge, he first became aware of the Alabama action only when Milltex applied for the TRO on February 21, 1989. Opinion of Oct. 23, 1992, at 15, 153 F.R.D. at 46.

The record before us does not indicate whether Jacquard did in fact take steps to stay the federal action. The record is deficient, according to Vann, because under the district judge's individual rules on motions practice, Vann was required to seek a pre-motion conference in order to obtain permission to file a motion to postpone the New York trial. Appellant's Br. at 13 n. 11. While Vann had ways to ensure that his purported request became a matter of record (*e.g.*, by writing a letter to the court memorializing his request), he should not have been prevented from filing the motion, if in fact he was. As we have recognized before, "[a]bsent extraordinary circumstances, such as a demonstrated history of frivolous and vexatious litigation ... or a failure to comply with sanctions imposed for such conduct ... a court has no power to prevent a party from filing pleadings, motions or appeals authorized by the Federal Rules of Civil Procedure." *Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir.1987). Although it is within the judge's discretion to hold a pre-motion conference for the purpose of persuading a party not to file a perceived meritless motion,[9] *see id.* ("We do not suggest that district judges cannot require a conference prior to the filing of motions as a

means of managing litigation assigned to them."), the judge may not require that the court's permission be secured at such a conference before a party may file the motion.[10]

Whether or not Vann moved for a stay in the district court is not crucial, however, to resolving the question before us. Even if he did not, his conduct with respect to the adjournment of the federal action does not sink to the level of bad faith. To be sure, Vann should have told the district court about the impending Alabama trial date before it adjourned the trial on February 17, 1989.[11] Yet counsel for Milltex also neglected to mention it to the court, and, as we stated on another occasion in this very litigation, "[i]t is difficult to assess blame when both parties knowingly kept the district court uninformed." *Milltex Indus. Corp. v. Jacquard Lace Co.*, 922 F.2d 164, 167 n. 4 (2d Cir.1991).

The district court found that only Vann had acted in bad faith, however, because Milltex's counsel was "at all times ready to carry the New York case to judgment." Opinion of Oct. 23, 1992, at 9, 153 F.R.D. at 47. This argument raises two problems. First, Vann cannot be held responsible for his client's decision to pursue the Alabama action because the decision was made largely by Jacquard and its Alabama counsel, William Sanderson. More important, the decision to go forward in Alabama was neither "entirely without color" nor motivated by "improper purposes." To the contrary, current law under the Anti–Injunction Act, 28 U.S.C. § 2283, does not permit a federal court to interfere with a party's simultaneous pursuit of an action in state court. *See Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engrs.*, 398 U.S. 281, 295–96, 90

---

8. *See supra* note 2.

9. We take judicial notice that at least nine judges in the Southern District of New York require pre-motion conferences. See the "Court Calendars" in the *New York Law Journal*, Feb. 1, 1995, at 38–39.

10. Judges and parties interested in avoiding the problem presented here—where the formal record is silent on a matter and the recollections of counsel differ—would do well to seek to have these conferences transcribed by a court reporter; in any event, counsel are always well advised

to protect the record and their own reputations by (if necessary) recording their understandings in letters addressed to the court.

11. At a hearing held April 19, 1990, Vann told the district court that he did not notify it of the February 21, 1989, calendar call because he was not aware of it. The district court did not credit this representation. Lehman, counsel for Milltex, explained his own failure to notify the judge as "a huge bit of ignorance." Opinion of Oct. 23, 1992, at 13, 153 F.R.D. at 48 (quoting transcript of April 19, 1990 Hearing).

S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970) ("[T]he state and federal courts had concurrent jurisdiction in this case, and neither court was free to prevent either party from simultaneously pursuing claims in both courts."). And the district judge stopped short of finding that Jacquard's reason for seeking to adjourn early on Friday—to permit Diamantis to return to Alabama for the holiday weekend—was a false pretext at the time the adjournment was discussed. Opinion of Oct. 23, 1992, at 26, 153 F.R.D. at 48.

Without a finding that Vann deliberately misled the court at the time his client sought an early adjournment, we cannot conclude that Vann acted in bad faith. After the district court adjourned the trial, there is not much Vann could have done to change the course of events that then unfolded. It was Jacquard's Alabama counsel who made the decision to take advantage of the February 21, 1989 Alabama calendar call and urged the Alabama court to decide Jacquard's summary judgment motion. And though Vann deserves some criticism for failing to inform the district judge about the imminent Alabama trial date, so too does counsel for Milltex. Vann's failure in this regard, standing alone, does not justify a finding of bad faith.

**B. *Violation of the TRO***

■ In its decision finding that Vann and Jacquard committed misconduct warranting sanctions, the district court stated that "no

12. The parties entered this stipulation after the Court of Appeals had heard argument on Jacquard's appeal of the district court's orders granting the TRO and preliminary injunction, which prevented Jacquard from enforcing the Alabama judgment.

13. Vann represented to the district court, however, that he did not tell Jacquard about the TRO on February 21, 1989, because he did not believe it was enforceable until Milltex obtained a bond and made formal service upon him. Although the district court openly doubted the veracity of Vann's representation, it refrained from finding that Vann outright lied. The district court observed also that if Vann was telling the truth, he violated a duty to both his client and the court. *Id.* at 17–20, 153 F.R.D. at 51. There is no question that Vann should have informed Jacquard about the TRO immediately—if he in fact did not do so. Yet because Milltex promptly conveyed a copy of the TRO to Jacquard's Ala-

sanction should be imposed which would *have the effect* of holding Jacquard or Vann in contempt for violation [of] the February 21, 1989 temporary restraining order," Opinion of Oct. 23, 1992, at 26, 153 F.R.D. at 52–53 (emphasis added), because the parties had stipulated earlier that Milltex waived any right to institute civil or criminal contempt proceedings against Jacquard with respect to any alleged violations of the TRO.[12] The district court nevertheless went on to consider Vann's conduct in connection with the TRO because such conduct was "part of the pattern of subterfuge and defiance of obligation to the court." *Id.* at 27, 153 F.R.D. at 53.

The district court's findings with respect to Vann's response to the TRO do not support an award of sanctions against Vann. The district court found that Vann ignored the TRO in one of two ways: he might have "deliberately refrained from telling" Diamantis about it, but "the probabilities are strong that Vann immediately informed Diamantis" and "they both decided to ignore the order." *Id.* at 21, 153 F.R.D. at 51. We cannot uphold the sanctions award on the ground that Vann did not tell his client about the TRO, because the district court found this scenario to be unlikely.[13] On the other hand, if Vann did indeed tell Jacquard about the TRO, as the district court suggested, then we cannot blame Vann for its violation because it was Jacquard's Alabama counsel who made the decision in the Alabama court to proceed with that action in violation of the TRO.[14]

bama counsel, Jacquard apparently learned about the TRO on the morning of February 22.

14. By granting the TRO, the district court arguably violated the Anti–Injunction Act, 28 U.S.C. § 2283, which provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The Supreme Court has held that a federal court cannot circumvent the Act by enjoining a party, as opposed to a state court, from proceeding, *see Atlantic Coast Line R.R.*, 398 U.S. at 287, 90 S.Ct. at 1743; nor can a federal court issue an injunction for the purpose of preventing a state court judgment from having a preclusive effect, unless the federal court has *in rem* jurisdiction. *See Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 642, 97 S.Ct. 2881, 2893, 53 L.Ed.2d 1009 (1977) (plurality opinion) ("We have never viewed parallel *in per-*

Like the findings with respect to the adjournment of the federal trial, the district court's findings regarding the violation of the TRO by Vann and Jacquard do not justify the conclusion that Vann acted in bad faith.

### C. *Milltex's claim that Vann unduly prolonged district court proceedings*

Finally, Milltex argues that the sanctions against Vann are justified because he vexatiously multiplied proceedings in the district court by filing several motions and appeals seeking recognition of the Alabama judgment.[15] The district court did not rely on this ground in deciding to sanction Vann, however, and we cannot uphold an exercise of inherent authority based on findings the district court never made. In any event, in the absence of a finding that Vann contrived a deceptive reason to adjourn the federal trial, he cannot be penalized for Jacquard's pursuit of the action in Alabama. Indeed, after Jacquard obtained a favorable judgment there, Vann arguably had an obligation to his client to seek its enforcement. In these circumstances we are unable to conclude that Vann acted in bad faith because of the steps he took to enforce the Alabama judgment—steps taken that, while perhaps excessive, cannot be described accurately as "entirely without color." *See Oliveri*, 803 F.2d at 1272.

### III. CONCLUSION

In holding that the district court abused its discretion by sanctioning Vann for acting in bad faith, we are in no way stamping Vann's conduct with our approval. Rather, mindful

that an award of sanctions is a severe penalty, we will uphold sanctions under the "bad-faith exception to the American Rule" only when serious misconduct clearly appears on the record. Although Vann's conduct during the course of this litigation was hardly exemplary, it did not fall to a level where we could say with assurance that his actions were entirely meritless and motivated by improper purposes. Accordingly, we reverse the district court's judgment against him and remand the cause with instructions to strike any reference in the judgment to Vann's liability for the $21,510.23 award in favor of Milltex.[16]

---

*sonam* actions as interfering with the jurisdiction of either court...."); *In re Baldwin–United Corp.*, 770 F.2d 328, 336 (2d Cir.1985) ("[T]he mere existence of a parallel lawsuit in state court that seeks to adjudicate the same *in personam* cause of action does not in itself provide sufficient grounds for an injunction against a state action in favor of a pending federal action.").

The fact that a court order might be unlawful does not, of course, give a lawyer or client license to violate it; to the contrary, the proper course is to adhere to the order until—and unless—it is vacated. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 293, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947) ("[A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper pro-

ceedings."); *Vakalis v. Shawmut Corp.*, 925 F.2d 34, 36–37 (1st Cir.1991) (per curiam) ("[A] court may convict a person of contempt for disobeying a court order even though the person believes in good faith that the court order is unlawful.") (internal quotation marks and citation omitted).

15. After securing a favorable judgment in Alabama, Jacquard sought, among other things, to dismiss Milltex's New York suit on *res judicata* grounds, to stay the New York proceedings, to vacate the preliminary injunction preventing enforcement of the Alabama judgment, and to vacate the final judgment of the district court in favor of Milltex.

16. *See supra* note 1.