Julia Karen EISEMANN,
Plaintiff–Appellant,

v.

Miriam GREENE, M.D.,
Defendant–Appellee.

Docket No. 98–9302

United States Court of Appeals,
Second Circuit.

Argued July 14, 1999.
Decided Feb. 17, 2000.

Alexander E. Eisemann, New York, N.Y., for Appellant.

Daniel S. Ratner, Heidell, Pittoni, Murphy & Bach, LLP, New York, N.Y., for Appellee.

Before: WALKER, CABRANES and SACK, Circuit Judges.

1. All other claims are addressed in a summary order filed simultaneously herewith.

PER CURIAM.

Plaintiff Julia Karen Eisemann appeals from an order of the United States District Court for the Southern District of New York (Jed S. Rakoff, *Judge* ), entered August 27, 1998, imposing sanctions on plaintiff's counsel for filing a motion for reconsideration of the order granting defendant's motion for summary judgment. Eisemann also appeals from (1) the District Court's judgment entered May 13, 1998, granting summary judgment to defendant and denying Eisemann's various requests for further discovery, and (2) so much of the Court's August 27, 1998 order as reallocated to the Clerk of the Court a portion of a $5000 sanction imposed earlier *on defense counsel,* who originally had been ordered to pay the entire amount to plaintiff. We address here only the challenge to the District Court's imposition of sanctions on Eisemann's counsel for filing a motion for reconsideration.[1] For the reasons stated below, we reverse the order insofar as it imposed sanctions on Eisemann's counsel.

## I.

On February 24, 1995, Eisemann visited Dr. Miriam Greene for a gynecological examination, during the course of which Dr. Greene conducted a rectal examination. Eisemann alleges that Dr. Greene did not give her advance warning of the rectal examination and that Dr. Greene performed it by "forcefully" and "abruptly" inserting her finger in Eisemann's rectum. Eisemann maintains that she reacted by forcefully "clench[ing]" her anal sphincter muscle and that she immediately experienced pain in the area of the coccyx (commonly referred to as the "tail bone"). She claims that she had never experienced pain in that area prior to this experience, but that she continued to suffer pain for years after the incident.

*See Eisemann v. Greene,* No. 98–9302 (2d Cir. January __, 2000).

On May 23, 1995, having decided to leave the care of Dr. Greene, Eisemann visited Dr. Gary Markoff, an obstetrician-gynecologist. Dr. Markoff also performed a rectal examination, but made no diagnosis as to the cause of Eisemann's pain. In January 1996, she sought treatment from a third gynecologist, Dr. Gerard Varlotta, who diagnosed her condition as "a strain to the sacrococcygeal joint and the ligaments." Nineteen months later, on August 15, 1997, Eisemann filed the instant action against Dr. Greene. On May 6, 1998, the District Court concluded that the evidence was insufficient to show that Dr. Greene's examination caused Eisemann's injury and granted defendant's motion for summary judgment.

■ After the entry of summary judgment, the parties, both of whom had indicated a desire to file a motion for reconsideration, contacted the judge's chambers, and jointly discussed with his law clerk the likely bases for their planned motions for reconsideration. The conference call with the law clerk was presumably undertaken pursuant to Rule 2(b) of the judge's individual rules, which states in pertinent part:

As to any contemplated motion or application of any kind whatever, excepting only a motion for admission pro hac vice (which may be filed without prior authorization), counsel for all affected parties must jointly call to apprise Chambers of the nature of the proposed motion or application and to arrange for an in-court or telephonic conference with the Court. . . .

*Judges' Part Rules,* N.Y.L.J., Aug. 1999 at 79–80. After discussing the basis for

each motion, the law clerk, purporting to speak on behalf of the judge, granted permission to file the motions but advised both counsel that all grounds for reconsideration, with the exception of one argument advanced by defense counsel, did not appear "reasonably likely" to comply with the governing standards for filing motions for reconsideration under Rule 6.3 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York.[2] The judge's law clerk also warned that the filing of any frivolous motion would result in sanctions. Eisemann's attorney nevertheless filed his motion for reconsideration. Defendant responded to the Eisemann motion by filing a "motion for sanctions for having to respond to plaintiff's frivolous motion for reconsideration." The District Court granted defendant's motion and imposed a sanction of $1000 on Eisemann's counsel, pursuant to both 28 U.S.C. § 1927[3] and the Court's "inherent supervisory power." Eisemann's counsel appeals claiming that the imposition of sanctions was improper.

## II.

■ Under its inherent powers to supervise and control its own proceedings, a district court has the authority to award attorney's fees to the prevailing party when the losing party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974); *see also Oliveri v. Thompson,* 803 F.2d 1265, 1272 (2d Cir.1986). Similarly, under § 1927, a district court may award attorney's fees against an attorney or oth-

---

2. Local Rule 6.3 provides in relevant part: "There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." To be entitled to reargument, a party "must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion." *Shamis v. Ambassador Factors Corp.,* 187 F.R.D. 148, 151 (S.D.N.Y.1999).

3. Section 1927 states:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

er party authorized to practice before the courts who "multiplies the proceedings in any case unreasonably and vexatiously." To impose sanctions under either authority, a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, "motivated by improper purposes such as harassment or delay." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999); *see also Agee v. Paramount Comm.*, 114 F.3d 395, 398 (2d Cir.1997). We have interpreted the bad faith standard restrictively:

> To ensure ... that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color, and are taken for reasons of harassment or delay or for other improper purposes *and a high degree of specificity in the factual findings of the lower courts.*

*Dow Chem. Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir.1986) (emphasis added) (internal citations, quotation marks, and brackets omitted); *see also Schlaifer Nance*, 194 F.3d at 338 ("[T]he Court's factual findings of bad faith must be characterized by a high degree of specificity." (internal quotation marks omitted)); *MacDraw, Inc. v. CIT Group Equip. Fin.*, 73 F.3d 1253, 1262 (2d. Cir. 1996) (vacating imposition of sanctions because the District Court "engaged in no detailed consideration of what conduct by plaintiff's counsel satisfied the bad faith requirement").

In imposing sanctions in the instant case, the District Court found bad faith on the part of Eisemann's counsel. The Court stated that Eisemann's motion for reconsideration was the

> latest manifestation of [her] counsel's belief, displayed repeatedly throughout this case, that upon any motion by his adversary, he has "no choice" but to respond by interposing a similar motion of his own. The inevitable effect of this tactic can only be to increase the burdens on the Court and all counsel for no proper purpose, as the record of this case amply demonstrates.

The only other reason cited by the Court for the imposition of sanctions is the fact that counsel "persisted" with his motion for reconsideration after he had been forewarned by the Judge's law clerk during the telephone conference that counsel's contentions were on their face inappropriate for reconsideration. The Court stated that "[t]his disregard of the applicable standards for reconsideration, coupled with the patent invalidity of the legal arguments presented in plaintiff's motions, make clear that the motion was brought in bad faith."

▇▇▇ A District Court's imposition of sanctions is reviewed for abuse of discretion. *See Schlaifer Nance*, 194 F.3d at 333. However, this standard of review "is not as simple as it may appear at first blush." *Id.* Indeed, recently we have observed that

> [a] troublesome aspect of a trial court's power to impose sanctions, either as a result of a finding of contempt, pursuant to the court's inherent power, or under a variety of rules ... is that the trial court may act as accuser, fact finder and sentencing judge, not subject to restrictions of any procedural code and at times not limited by any rule of law governing the severity of sanctions that may be imposed.

*Mackler Productions v. Cohen*, 146 F.3d 126, 128 (2d Cir.1998). Thus, although we are mindful that "the decision to impose sanctions is uniquely within the province of a district court, we nevertheless need to ensure that any such decision is made with restraint and discretion." *Schlaifer Nance*, 194 F.3d at 334.

The District Court did not make sufficiently specific factual findings to support

its conclusion that Eisemann's motion for reconsideration, or any other motion filed in the course of this litigation, was "entirely without color and ... taken for reasons of harassment or delay or for other improper purposes." *Dow Chem. Pacific Ltd.*, 782 F.2d at 344. Instead, the Court's conclusory determination that Eisemann's motion was filed in bad faith rested almost entirely on its lack of merit. It is sometimes possible to infer bad faith from the meritlessness of a motion. *See Schlaifer Nance*, 194 F.3d at 338. But absent greater specificity from the District Court, the failure to meet the standards of Local Rule 6.3—a proper basis for denial of her motion for reconsideration—is not, without more, a proper basis for the imposition of sanctions on Eisemann's counsel.

Moreover, imposing sanctions, in part, for failing to heed the Court's "advice" as to whether a motion is appropriate amounts to establishing an unacceptable requirement that parties obtain the Court's prior authorization before filing a motion. Although we have recognized that "it is within the judge's discretion to hold a pre-motion conference for the purpose of persuading a party not to file a perceived meritless motion," [4] *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 39 (2d Cir.1995), we have made it clear that "the judge may not require that the court's permission be secured at such a conference before a party may file the motion." *Milltex*, 55 F.3d at 39; *see also MacDraw*, 73 F.3d at 1256 n. 2 (same); *Richardson*, 825 F.2d at 652 ("Absent extraordinary circumstances, ... a court has no power to prevent a party from filing pleadings, motions or appeals authorized by the Federal Rules of Civil Procedure.").

## III.

In the circumstances presented, we are required to conclude that the District Court's determination of bad faith, and its imposition of sanctions on Eisemann's counsel, was an abuse of discretion. Accordingly, the District Court's order of August 27, 1998 is reversed insofar as it imposed sanctions on Eisemann's counsel.

---

4. Indeed, we have noted that holding pre-motion conferences *with a judge* "may serve the useful purpose of narrowing and resolving conflicts between the parties and preventing the filing of unnecessary papers." *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir.1987), but we have not encouraged—and do not now consider—the practice of having litigants confer on the merits of cases with law clerks or other chambers personnel.