LINN, Circuit Judge.
Movant Gutride Safier LLP ("Gutride"), a law firm representing AlphaCap Ventures, LLC ("AlphaCap") in the district court litigation here, appeals the award of fees under 28 U.S.C. § 1927, making Gutride jointly and severally liable for all expenses incurred by Gust, Inc. in defending the instant lawsuit, including attorneys' fees and costs. Gust, Inc. v. AlphaCap Ventures, LLC , 226 F.Supp.3d 232 (" Fees Op. "); Gust, Inc. v. AlphaCap Ventures, LLC , No. 15-cv-06192, 2017 WL 2875642 (S.D.N.Y. July 6, 2017) (" Reconsideration Op. "). Because the district court abused its discretion by awarding fees and costs under 28 U.S.C. § 1927, we reverse.
I. BACKGROUND
AlphaCap is a non-capitalized non-practicing entity based in California. In January 2015, AlphaCap hired Gutride on a contingency basis, and sued ten internet crowdfunding companies for patent infringement of AlphaCap's U.S. Patents No. 7,848,976 ("'976 patent") ; No. 7,908,208 ("'208 patent") ; No. 8,433, 630 ("'630 patent") (collectively, "patents at issue") in the Eastern District of Texas. Nine of the defendants settled for less than $50,000 each, leaving only Gust contesting infringement and validity. A timeline of relevant events in the ensuing litigation is as follows:
Timeline of Relevant Events
June 19, Supreme Court issues Alice Corp. Pty. Ltd. v. 2014 CLS Bank Int'l , 573 U.S. 208, 134 S.Ct. 2347, 189 L.Ed.2d 296 (2014) Jan. 2015 AlphaCap sues Gust in the Eastern District of Texas June 19 AlphaCap proposes to dismiss and settle and Gust rejects the offer June 22 Gust files a motion to transfer under 28 U.S.C. §§ 1404, 1406 June 29 The Southern District of New York decides Kickstarter, Inc. v. Fan Funded, LLC , No. 11-cv-6909, 2015 WL 3947178 (S.D.N.Y. June 29, 2015), aff'd 654 F. App'x 481 (Fed. Cir. 2016), applying Alice to find certain unrelated claims directed to crowdfunding invalid under § 101 July 2 Gutride tells Gust's counsel that the case is "not worth litigating," and AlphaCap offers to dismiss its complaint with prejudice as a walkaway settlement; Gust refuses unless AlphaCap assigns all patents to Gust July 2 AlphaCap files a motion for venue discovery; Gust agrees to venue discovery and the district court issues a discovery order Venue discovery runs through September *1326 1 July 9 Gust sends AlphaCap a formal settlement offer, explaining its § 101 invalidity position in view of Alice , and proposes that AlphaCap dismiss its complaint with prejudice and either pay Gust's attorneys' fees or assign full ownership of all AlphaCap patents to Gust. Under its terms, AlphaCap would keep all prior licensing revenue July 28 AlphaCap offers walkaway settlement; Gust refuses August 6 Gust files for Declaratory Judgment of no infringement, invalidity, abuse of process, tortious interference, and antitrust in the Southern District of New York August 17 Gust offers to dismiss it's action in the Southern District of New York if AlphaCap dismisses its action with prejudice, pays all of Gust's attorneys' fees-totaling $175,000 up to that point-and assigns ownership of all patents to Gust; AlphaCap refuses August 24 AlphaCap threatens to move for sanctions under Federal Rules of Civil Procedure 11 (" Rule 11") unless Gust dismisses its declaratory judgment action in the Southern District of New York November AlphaCap moves for sanctions under Rule 11 6 and moves to dismiss Gust's claims in the Southern District of New York. August Claim construction discovery period 2015 until February 2016 March 2 Eastern District of Texas transfers AlphaCap's case to the Southern District of New York May 18 AlphaCap provides Gust with covenant not to sue on the patents at issue July 28 The Southern District of New York dismisses both AlphaCap's and Gust's claims August 19 Gust moves for attorneys' fees under 35 U.S.C. § 285 and 28 U.S.C. § 1927 December The Southern District of New York awards fees 8 to Gust under § 285 and § 1927 July 6, The Southern District of New York denies 2017 AlphaCap's motion for reconsideration.
In its December 8, 2016 decision, the district court first concluded that this case was "exceptional" under § 285. The district court explained that Alice "gave AlphaCap clear notice that the AlphaCap Patents could not survive scrutiny under 35 U.S.C. § 101." Fees Op. , 226 F.Supp.3d at 241. The district court concluded that the claims were directed to crowdfunding, a fundamental economic concept and way of organizing human activity, and that this was an abstract idea. Id. at 241-44. The district court rejected AlphaCap's argument that the claims were directed to improvements in computer functionality, because the claimed computer components were routine and conventional in the industry. Fees Op. , 226 F.Supp.3d at 243-44 (distinguishing Enfish LLC v. Microsoft Corp. , 822 F.3d 1327, 1335 (Fed. Cir. 2016) ). The district court then found that the claims did not include an inventive concept sufficient to render the abstract ideas patent eligible under Alice Step 2. Id. at 240.
The district court further concluded that the case was exceptional because: (1) AlphaCap brought the case "to extract a nuisance settlement from Gust," as confirmed by the "paltry settlements" to which AlphaCap agreed with the other nine defendants and AlphaCap's decision to file in the Eastern District of Texas, a venue distant from Gust's Delaware home, id. at 245 ; and (2) an award is necessary to deter AlphaCap's predatory patent enforcement practice, id. AlphaCap does not appeal the district court's exceptional case determination or the award of attorney's fees.
This appeal only raises Gutride's joint and several liability for Gust's attorneys' fees under § 1927. The district court concluded that Gutride's litigation conduct justified an award under § 1927 because its actions were unreasonable and taken in *1327 bad faith. Specifically, the district court focused on Gutride's unwillingness to settle pursuant to Gust's terms despite knowing that Alice doomed the claims and stating that the case was "not worth litigating" and resisting Gust's motion to transfer out of the Eastern District of Texas. The court awarded all expenses incurred by Gust in the amount of $492,420 in fees and $15,923 in costs, jointly and severally against AlphaCap and Gutride. The district court also awarded prejudgment interest at a New York State rate of 9%. Id. at 254.
On reconsideration, the district court noted that "Fees under Section 1927 were not awarded based on the filing of the litigation." Reconsideration Op. at *16. But, the district court explained that the filing of what it considered to be frivolous litigation was nevertheless "not irrelevant to the decision to impose fees," because it "supported [the district court's earlier] finding that counsel acted in bad faith when it unreasonably and vexatiously multiplied the proceedings." Id. The district court also rejected Gutride's argument that AlphaCap, as the client, was responsible for the delay in issuing a covenant not to sue to Gust, rather than Gutride, but did not directly address the role of the client and the counsel in creating delay due to the failure to issue a covenant not to sue.
Gutride, as movant, timely appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).
II. STANDARD OF REVIEW
We review § 1927 awards under the law of the regional circuit. Phonometrics, Inc. v. Westin Hotel Co. , 350 F.3d 1242, 1246 (Fed. Cir. 2003). The Second Circuit reviews the imposition of sanctions for an abuse of discretion. Wolters Kluwer Fin. Servs., Inc. v. Scivantage , 564 F.3d 110, 113 (2d Cir. 2009). When a district court acts as "accuser, fact finder and sentencing judge all in one, [the Second Circuit reviews under a] more exacting [standard] than under the ordinary abuse-of-discretion standard." Id. at 113-14 (internal quotes and citation omitted). This more exacting standard requires the appeals court to "ensure that any such [award] is made with restraint and discretion" by requiring "sufficiently specific factual findings" to avoid conclusory determinations by the district court. Eisemann v. Greene , 204 F.3d 393, 396 (2d Cir. 2000) (internal quotes and citation omitted). Just as when a district court imposes sanctions under Rule 11, "the court is to avoid hindsight and resolve all doubts in favor" of the non-movant. See Oliveri v. Thompson , 803 F.2d 1265, 1275 (2d Cir. 1986).
III. 28 U.S.C. § 1927
Section 1927 of Title 28 allows a district court to award fees directly against a party's attorney under certain circumstances.
Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.
In the Second Circuit, an award under § 1927 requires: (1) that claims were "entirely without color," and (2) "were brought in bad faith-that is, motivated by improper purposes such as harassment or delay." Advanced Magnetic Closures, Inc. v. Rome Fastener Corp. , 607 F.3d 817, 833 (Fed. Cir. 2010) (citing Eisemann , 204 F.3d at 396 ). The relevant "claims" are the attorney actions deemed motivated by improper purposes. See Oliveri , 803 F.2d at 1273 ("[A]n award under § 1927 is proper when the attorney's actions are so completely without merit as to *1328 require the conclusion that they must have been undertaken for some improper purpose such as delay.") (emphasis added).
Both elements must be met before a district court may make an award under § 1927. Moreover, both determinations require a district court to provide "a high degree of specificity in the factual findings." Dow Chem. Pac. Ltd. v. Rascator Maritime S.A. , 782 F.2d 329, 344 (2d Cir. 1986).
A. The "Color" of AlphaCap's Claims
The district court held that Gutride's continued contention that AlphaCap's claims were patent-eligible lacked color. Fees Op. , 226 F.Supp.3d at 251 ; id. at 241-45 (concluding that AlphaCap's position on § 101 was objectively unreasonable in the context of 35 U.S.C. § 285 ). The district court based its fee award in part on the baselessness of AlphaCap's position in filing this suit, id. at 248 ("Realizing that they could not defend the AlphaCap Patents against a § 101 validity challenge, they chose nonetheless to file this contingency-fee lawsuit."), and on Gutride's insistence on continuing the litigation.
Gutride first argues that the district court erred by supporting its fee award under § 1927 with the baselessness of AlphaCap bringing its complaint, which, it contends, is only an appropriate consideration under Rule 11. Gutride also argues that AlphaCap's position that the patents at issue are not invalid under § 101 were colorable within the unsettled state of the law following the decision in Alice . Gust responds that the district court properly considered the baselessness of AlphaCap's claims in support of its determination that AlphaCap and Gust continued the litigation in bad faith, see Reconsideration Op. at *16, and that one of the requirements of a § 1927 award-that "the offending party's claims were entirely without color," Eisemann , 204 F.3d at 396 -requires consideration of the baselessness of the offending party's claims. Gust also argues that the § 101 law post- Alice was settled, because all cases dealing with abstract ideas in patents cited the two-step Alice framework. Finally, Gust argues that the claims here were not even question-ably patent eligible.
We agree with Gutride that neither the filing of this case nor Gutride's continuation of the litigation support a § 1927 award.
On its face, § 1927 only applies to actions that result in unreasonable and vexatious multiplication of proceedings. This necessarily excludes a filing of a baseless complaint, which is properly analyzed under Fed. R. Civ. P. 11. Jensen v. Phillips Screw Co. , 546 F.3d 59, 65 (1st Cir. 2008) ("[A]n unbroken band of cases across the courts of appeals hold[s] that a lawyer cannot violate section 1927 in the course of commencing an action," and therefore holding that the failure to vet or investigate a claim cannot give rise to a § 1927 sanction); Zuk v. E. Pa. Psychiatric Inst. , 103 F.3d 294, 297 (3d Cir. 1996) (holding that § 1927 award is unavailable for failing to adequately investigate the facts and law prior to filing a complaint); DeBauche v. Trani , 191 F.3d 499, 511 (4th Cir. 1999). Although the Second Circuit has not stated this explicitly, it has stated that the primary purpose of § 1927 is "to deter unnecessary delays in litigation." Oliveri , 803 F.2d at 1273 (emphasis added) (quoting H.R.Conf. Rep. No. 1234, 96th Cong., 2d Sess. 8, reprinted in 1980 U.S. Code Cong. & Ad. News, 2716, 2782). Coupled with the clear language of § 1927, we conclude that the Second Circuit would join the "unbroken band of cases" excluding baseless filing of a complaint from supporting an award under § 1927.
We also agree with Gutride that AlphaCap's position on patent eligibility *1329 was colorable, particularly given the relative paucity of § 101 cases that were decided by this court between Alice and AlphaCap's complaint in Texas. ''[A] claim is entirely without color when it lacks any legal or factual basis.'' Schlaifer Nance & Co. v. Estate of Warhol , 194 F.3d 323, 337 (2d Cir.1999) (internal quotation marks omitted). When the applicable law is unsettled, attorneys may not be sanctioned merely for making reasonable arguments for interpreting the law. Secs.Indus. Ass'n v. Clarke , 898 F.2d 318, 321-22 (2d Cir. 1990), abrogated on other grounds recognized by Mareno v. Rowe , 910 F.2d 1043, 1047 (2d Cir. 1990). This is just another way of saying that the domain of colorable arguments is broader when the law is unsettled.
During the pendency of this litigation, the abstract idea law was unsettled. AlphaCap filed suit in January of 2015, just seven months after the Supreme Court decided Alice . Between Alice and AlphaCap's complaint in Texas, this court in a majority opinion cited Alice only seven times. Several of those cases recognized the uncertainty in the application of Alice . See Content Extraction & Transmission LLC v. Wells Fargo Bank , 776 F.3d 1343, 1347 (Fed. Cir. 2014) ("The Supreme Court has not 'delimit[ed] the precise contours of the 'abstract ideas' category.' "); DDR Holdings , 773 F.3d at 1256 (same); id. at 1255 ("Distinguishing between claims that recite a patent-eligible invention and claims that add too little to a patent-ineligible abstract concept can be difficult, as the line separating the two is not always clear.").
Moreover, Gust is simply incorrect that because all abstract idea cases after Alice applied the two-step Alice /Mayo framework, patent eligibility after Alice was settled. In view of the evolving nature of § 101 jurisprudence during the merits stage of this lawsuit, it is particularly important to allow attorneys the latitude necessary to challenge and thus solidify the legal rules without the chill of direct economic sanctions. See In re Pennie & Edmonds LLP , 323 F.3d 86, 90-91 (2d Cir. 2003) ("If the sanction regime [on lawyers] is too severe, lawyers will sometimes be deterred from making legitimate submissions on behalf of clients out of apprehension that their conduct will erroneously be deemed improper.").
The claims here when filed were not within the narrow universe of sanctionable arguments under § 1927, and we agree with Gutride that the district court abused its discretion in concluding that "the AlphaCap Patents do not fall in that interstitial area where doubt may reasonably exist" about their eligibility. Reconsideration Op. at *11 n.3. First, the eligibility of the claims at issue is not precluded simply because they are directed to software based business methods. Our case law recognizes that there is no bright line exclusion of software patents or business method patents from patent eligibility. Ultramercial, Inc. v. Hulu, LLC , 772 F.3d 709, 715 (Fed. Cir. 2014) ("[W]e do not purport to state that all claims in all software-based patents will necessarily be directed to an abstract idea."); buySAFE, Inc. v. Google, Inc. , 765 F.3d 1350, 1354 (Fed. Cir. 2014) (recognizing that Bilski v. Kappos , 561 U.S. 593, 611, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010) did not create a general business method exception for patent eligibility).
Gutride argues that the claims require a data collection template using a semi-homogenous profile, and that this at least colorably supported patent eligibility throughout the pendency of the litigation. Gutride focuses on the independent claims in the '208 patent to support its colorable eligibility argument. Claim 1 of the *1330 '208 patent claims "A method for managing resource consumer information," comprising: "defining, by at least one processor, a data collection template of fields for a semi-homogenous profile desired by a resource provider," "customizing the template in real time," "maintaining an electronic database system by a trusted third party who is neutral," storing certain information, and allowing the creation of distinct portfolio records for different types of portfolios. '208 patent, col. 25, ll.5-39. Gutride analogizes this claim to the claims found patent eligible in DDR Holdings .
The invention in DDR Holdings allowed a host merchant website to maintain the look and feel of the host website when hyperlinking to outside merchants' product pages. DDR Holdings , 773 F.3d at 1257-58. We held the claims to be patent eligible because they "do [not] recite a commonplace business method aimed at processing business information, applying a known business process to the particular technological environment of the Internet, or creating or altering contractual relations using generic computer functions and conventional network operations." Id. at 1259. This court distinguished Ultramercial, Inc. v. Hulu, LLC , 772 F.3d 709 (Fed. Cir. 2014) because the claims in DDR Holdings did not "broadly and generically claim 'use of the Internet' to perform an abstract business practice (with insignificant added activity)," but rather "specify how interactions with the Internet are manipulated to yield a desired result-a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink." DDR Holdings , 773 F.3d at 1258.
Gutride argues that both the invention at issue here and that of DDR Holdings use semi-homogenous structures to balance users' needs for individualized ads (in DDR Holdings ) or loan requirements (here) against the efficiency of a single form document. We find this argument somewhat dubious because the basis for DDR Holdings was not semi-homogeneity itself, but the maintenance of the look and feel of internet hyperlinks. Our task here, however, is to determine whether Gutride, in the nearly immediate aftermath of Alice , vexatiously and unreasonably multiplied the proceedings in this litigation by continuing a litigation premised on arguments lacking any color. Gutride's arguments for patent eligibility were not so lacking in color to support such a conclusion.
Gust argues that the Southern District of New York's conclusion in Kickstarter , No. 11-cv-6909, 2015 WL 3947178, that claims directed to internet crowdfunding were ineligible, supports the district court's conclusion that AlphaCap's position lacked color. This argument is inapposite. First, the claims found ineligible in Kickstarter were in patents unrelated to those at issue here. Second, much of the confusion in abstract idea law after Alice is in the proper categorization of what a claim is directed to. The district court in Kickstarter categorized the claims as directed to "crowd-funding" or similar concepts. Id. at *11. The patents at issue here do not discuss crowdfunding, and the district court did not compare the claims here to those at issue in Kickstarter .
The district court's conclusion that Gutride's patent eligibility position lacked color was built on improper hindsight as to the state of the law and a conclusory analysis of the claims at issue. Under the exacting standard of review applicable in this § 1927 case, we conclude that the district court abused its discretion by holding that Gutride's position with respect to patent eligibility lacked color.
B. Bad Faith
The district court also abused its discretion by concluding that Gutride's actions *1331 throughout the litigation constituted bad faith. The district court reached its conclusion based on the following: (1) The circumstances around AlphaCap's bringing of the suit-that Gutride knew that AlphaCap's patents were not patent eligible after Alice , and initiated the litigation anyway to extract a nuisance settlement; (2) Gutride's decision to litigate in the Eastern District of Texas and frivolously oppose transfer to the clearly more convenient Southern District of New York, including moving for venue discovery and filing a surreply in opposition to Gust's motion to transfer; and (3) Gutride's failure to end the case through settlement, dismissal, or a covenant not to sue. Gutride argues that the district court abused its discretion on all of these grounds. We agree and address each, in turn.
1
As the district court explained on reconsideration, the circumstances surrounding the filing of the frivolous litigation, "drove or colored virtually every decision counsel made during the litigation," Reconsideration Op. at *16. These circumstances were that Gutride knew that AlphaCap's patents were not patent eligible after Alice and "AlphaCap's goal was to extract a nuisance settlement from Gust." Fees Op. , 226 F.Supp.3d at 241.
a
First, the district court relied on three bases to support its contention that Gutride knew that AlphaCap's patents were not valid: (1) the district court's statement in its opinion granting Gust's motion to dismiss, that AlphaCap knew the patents were invalid, Fees Op. , 226 F.Supp.3d at 239-40 (citing Gust, Inc. v. AlphaCap Ventures, LLC , 2016 WL 4098544, at *2 (S.D.N.Y. July 28, 2016) (" Gust I ") ); (2) Gutride's statement to Gust's counsel that the case was "not worth litigating," id. at 238-39, 248, 253 (relying on Gutride attorney Safier's July 2 statement to Gust's counsel that the case was "not worth litigating"); and (3) the frivolousness of AlphaCap's position on § 101, id. at 248 ("AlphaCap's attorneys were well aware of Alice and its implications for the AlphaCap patents."). The statement in Gust I , however, was not a factual finding-it was a description of Gust's position in opposition to AlphaCap's motion to dismiss Gust's tort claims. Gust I , 2016 WL 4098544, at *1 ("The following facts are drawn from the pleadings and the documents attached thereto. The facts are construed in favor of Gust."). This is an improper basis to support a conclusion about Gutride's bad faith.
The district court also improperly relied on Safier's statement that the case is "not worth litigating" as evidence of Gutride's knowledge that AlphaCap's patents were invalid. In the context of advocating for settlement with the opposing party to settle, this is an inoffensive assertion that the calculus favors settlement, not an admission that the patents were invalid. See Q-Pharma,Inc. v. Andrew Jergens Co. , 360 F.3d 1295, 1304 (Fed. Cir. 2004) (holding that the statement that "further pursuit of the lawsuit would not have been worth the investment" was not evidence of bad faith).
As discussed in Section III.A., supra , AlphaCap's position that its claims were not invalid did not lack color. Bad faith may be inferred from attorney action only "if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Adv. Magnetic Closures , 607 F.3d at 834 (citing Schlaifer Nance & Co. , 194 F.3d at 336. Gutride's eligibility arguments here do not meet this standard.
The district court thus had no basis to find that Gutride knew that the patents were invalid after Alice , and it therefore *1332 erred in relying on this finding to support its bad faith determination.
b
The district court also supported its bad faith determination by noting that AlphaCap filed this lawsuit "as one of ten," "in the expectation that they could obtain quick settlements of relatively modest amounts from every major firm in the internet crowdfunding arena." Fees Op. , 226 F.Supp.3d at 248.
We appreciate the district court's concern with AlphaCap's business/litigation model here. As a non-capitalized, non-practicing entity, represented on a contingency fee basis, AlphaCap bears relatively little risk and cost in filing its infringement actions, as compared with the relatively high costs incurred by defendants to defend the lawsuit. By suing multiple defendants and encouraging quick settlements at values far below the cost of defending an infringement action on the merits, AlphaCap was able to obtain not insignificant revenues without having to test the merits of its position. Moreover, because it is non-capitalized, AlphaCap is not subject to the deterrent effect of § 285. As this court has previously recognized in the § 285 context, non-practicing entities can extract settlements from a large number of accused infringers owing to the potential for "disproportionate discovery costs" and assume little business risk. Eon-Net LP v. Flagstar Bancorp , 653 F.3d 1314, 1327-28 (Fed. Cir. 2011). We warned that "the appetite for licensing revenue cannot overpower a litigant's and its counsel's obligation to file cases reasonably based in law and fact and to litigate those cases in good faith." Id. at 1328.
Nevertheless, § 1927 is not the proper vehicle to generally address those concerns. As discussed above, supra at 1329, Rule 11, with its procedural safeguards, already addresses attorneys' complicity in the filing of frivolous and improper litigation. Moreover, the heart of the district court's concern is with AlphaCap, not its attorneys. As discussed below in connection with the decision not to settle or offer a covenant not to sue, infra at 1334, decisions within the client's domain are generally not attributable to its attorneys. It is the client's decision whether to capitalize its business, to acquire the patents, to decide whether to practice the patents, whether and who to sue, and whether and when to agree to low value settlements. Such client decision-making is a poor evidentiary basis on which to infer attorney bad faith in multiplying proceedings.[1]
2
Gutride's opposition to transfer also does not support a conclusion of bad faith. According to the district court, Gutride's position that New York was not clearly more convenient was frivolous, because Gust never resided in the Eastern District of Texas, Gust's only regular and established place of business was in New York, the allegedly infringing website was developed and hosted in New York, and the website is administered by Gust's New York employees. The district court explained that "AlphaCap could not identify a single piece of evidence located in or near the Eastern District of Texas." Fees Op. , 226 F.Supp.3d at 250.
Gutride asserts that it filed in Texas and opposed the motion to transfer because of *1333 the Eastern District of Texas's faster-moving docket, the experience of its attorney in that forum, and the central location of Texas with respect to relevant evidence between the East and West coasts. Gutride argues that: (1) an attorney only has an obligation to file in a proper forum, not in the most convenient forum, see Sussman v. Bank of Israel , 56 F.3d 450, 457 (2d Cir. 1995) ; (2) Gust agreed to venue discovery, and that Gutride may not be sanctioned for multiplying the proceedings by engaging in conduct voluntarily undertaken by Gust and ordered by the district court, see J. App'x at 2192-93; and (3) its position on convenience was allowed under then-current law, and unlike In re Genentech, Inc. , 566 F.3d 1338 (Fed. Cir. 2009), highlighted by the district court, at least some third-party users were found to reside in the Eastern District of Texas.
We agree with Gutride. First, under then-current law, the Eastern District of Texas was a proper forum because Gust was indisputably subject to personal jurisdiction in Texas. See VE Holding Corp. v. Johnson Gas Appliance Co. , 917 F.2d 1574 (Fed. Cir. 1990), abrogated by TC Heartland LLC v. Kraft Foods Grp. Brands LLC , --- U.S. ----, 137 S.Ct. 1514, 197 L.Ed.2d 816 (2017). Indeed, Gust dropped 28 U.S.C. § 1406 as a basis to support its transfer motion and limited its argument to forum non conveniens under 28 U.S.C. § 1404. As the Second Circuit held in Sussman , and not disputed by Gust, an attorney need not bring a case in the most convenient forum, but only a proper forum. Filing and attempting to keep the case in Texas was not, therefore, on its own, evidence of bad faith arguments. We also agree that Gutride cannot be sanctioned for engaging in venue discovery to which Gust agreed and the district court approved.
Finally, we agree with Gutride that its arguments that New York was not clearly a more convenient forum were not "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Adv. Magnetic Closures , 607 F.3d at 834 (citing Schlaifer Nance & Co. , 194 F.3d at 336 ). The convenience analysis is a multi-factor balancing test of public and private factors, not a bright line rule that Gutride tried to circumvent. When the Eastern District of Texas analyzed the factors, it found that a majority of the factors supported transfer, but not that all of them did.
The district court concluded that Gutride's position that Texas was more centrally located than New York-between AlphaCap's California headquarters and Gust's headquarters in New York (or Gust's development center in Vancouver)-necessarily conflicted with Genentech . Gutride correctly points out, however, that, unlike Genentech , at least some witnesses here-end users of Gust's website-were located in the Eastern District of Texas. J. App'x at 4072-73 (Gutride's representation of end user witnesses present in the Eastern District of Texas). See also Personalweb Techs., LLC v. Yahoo!, Inc. , No. 6:12-cv-658, 2014 WL 1689046, at *6 (E.D. Tex. Feb. 12, 2014) (end-users considered in venue analysis after Genentech ). Genentech is not as clear-cut against considering the centrality of a forum's location as the district court assumed-indeed, Genentech itself distinguished a case in which centrality could be considered where "a substantial number of witnesses" were residents of the plaintiff's chosen venue. See Genentech , 566 F.3d at 1344 (quoting and distinguishing United States v. Binder , 794 F.2d 1195, 1200 (7th Cir. 1986) ); id. (explaining that because no witnesses were resident in Texas, "the district court improperly used its central location as a consideration in the absence of witnesses within the plaintiff's choice of venue").
*1334 The district court clearly erred in concluding that "AlphaCap failed to identify a single witness located in the Eastern District of Texas." Fees Op. , 226 F.Supp.3d at 250.
3
Finally, we also agree with Gutride that AlphaCap's decision not to grant a covenant not to sue until May 18, 2016 is not evidence of Gutride's bad faith. The decision to settle or grant a covenant not to sue is wholly committed to clients, not their attorneys. See United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO , 986 F.2d 15, 19 (2d Cir. 1993) ("The Supreme Court recognized long ago that the decision to settle a case rests with the client alone.") (citing United States v. Beebe , 180 U.S. 343, 350-53, 21 S.Ct. 371, 45 L.Ed. 563 (1901) ). AlphaCap's decision not to issue the covenant earlier is not attorney multiplication of proceedings. Moreover, as discussed, supra , AlphaCap's position on patent eligibility did not lack color, and at least for that reason, the inference from AlphaCap's failure to resolve the case earlier to bad faith is lacking. For similar reasons, we reject the district court's consideration of AlphaCap's other low-value settlements to support its bad faith determination. Like the decision not to settle, the decision of what cases to settle and the terms of such settlements are matters within the discretion of the client.
IV
We therefore conclude that the district court abused its discretion under the more exacting review required by the Second Circuit in finding that Gutride unreasonably and vexatiously multiplied the proceedings by making arguments on patent eligibility and venue, and failing to resolve the litigation earlier than it did. We therefore reverse the district court's award of fees under § 1927 against Gutride.[2]
REVERSED
COSTS
No costs.
Dissenting opinion filed by Circuit Judge WALLACH.

We note that in the context of contingency fee arrangements, attorneys have more interest-and presumably somewhat more say-in these decisions than under other attorney-client fee arrangements. Gust has not, however, proffered any evidence that Gutride had control over such decisions.

Because of our disposition above, we do not consider whether Gust's failure to file Rule 11 or Rule 12 motions should have foreclosed or limited any award under § 1927. We also do not consider Gutride's challenge to the amount of the award, the propriety of pre-judgment interest, or the appropriate rate to apply when calculating such interest.